Taylor, Chief Justice,
 

 delivered the Court’s opinion. Two questions have been argued in this case, neither of which has been directly brought under discussion before. The first is, whether the act allowing the
 
 revival
 
 only of tortious actions shall be construed to allow the original institution of them against the representatives. The position has hitherto been taken for granted, that whatever suit could be revived, might also be instituted; and after an attentive consideration of the several acts, and the arguments offered by the counsel, this is, in my opinion, the proper construction of the law.
 

 According to the rules of the common law, as it existed in this state, unaltered by statute, prior to the year 1786, personal actions pending in court, abated by the death of either party; and equally so, whether they were founded upon tort or contract. In the former, the right of action, under the exceptions created by the statute of
 
 Edw.
 
 3. died wüh the person, and could not be revived, either by or against the executox’s, or other representatives; but in actions founded on contract, the action only, and not the right of action, abated, and a new suit might consequently be brought by or against the representative.
 

 By the act of 1786,
 
 ch.
 
 S53. the representatives were allowed to cari’y on
 
 every
 
 suit, or action in courts, after the death of either plaintiff or defendant; and, from the comprehensive terms of this law, it might be inferred that all actions, whether founded on tort or contract, were meant to be revivable; since, if it had been intended to restrain the privilege to such actions only as might have
 
 *496
 
 been brought by or against representatives, at common law, a limitation to that effect would probably have been
 
 .
 
 introduced, especially as the statute of 8
 
 <$f
 
 9
 
 Will.
 
 3. Prevents the abatement from the death of the party, after interlocutory judgment, is confined expressly to such actions as might originally be maintained by or against executors. A statute which must have been familiar to the members of the legislature.
 

 But a different construction was given to the act of 1786., by the Courts, wherein it was held, that it extended only to cases, where, before the act, the executor might sue or be sued, after the abatement of the former action.
 

 This construction was acquiesed in, until the year 1799, when various actions
 
 ex delicto,
 
 enumerated in that act,
 
 (ch.
 
 532.) are declared not to abate, and are allowed to be revived.
 

 It was by force of the maxim, “a personal action dies with the person,” that the death of either party abated the suit at common law; and it resulted from the operation of the same maxim, that the right of action was lost in tortious actions before any suit brought. The term, “action,” is then manifestly susceptibleof two significations, viz. an action pending in court, and a right of action in tortious cases where no suit is brought; and either. sense of the term must be adopted according to the subject matter to which it is applied. It seems to have been received in this light, by the legislature, in the two acts on this subject. «No action of detinue, &c. shall in any
 
 cause
 
 or court, abate or be discontinued.”
 
 (ch. 532. sec. 5.)
 
 The word action, when referred to court, is used in its literal sense; but what construction can be given to action in a cause, unless it be right of action? The meaning of the act then is, that no action of detinue,
 
 &c.
 
 in any court, or right of action in any cause, shall abate. I have thus resorted to the peculiar phraseology of the act, to show the meaning of the legislature, though it is probable that general principles would have led to
 
 *497
 
 the same conclusions; for when one doth release to another all actions, not only actions pending in-court, but also causes of action are released.
 
 Altham’s case,
 
 (8
 
 Co.)
 

 It might be thought, that the argument drawn from the words of the act, loses its force by the consideration that the terms “cause or court.” are employed in the act of 1786,
 
 ch.
 
 233. in the second clause, which aims to provide against the abatement of appeals by death; in which act the word “ cause,” furnishes a remedy against the death of either party, in the interval between the judgment in the County Court and docketting the appeal in the Superior Court. But this is obviated by the fact, that the act of 1786, uses the term to provide for causes not actually depending in any court; and as the peculiar case therein specified cannot need any farther provision, the same word was probably used in the act of 1799, to guard against the abatement of all causes, or causes of action not yet brought into court, and which are enumerated in the 5th section of the last mentioned act.
 

 But in addition to these considerations, it may be re-, marked that the legislature probably employed the words “the same shall, and may be revived,” to signify instituting an original suit, because they are used in the same sense by a writer distinguished, among other qualifications, for the critical precision of his style. In discussing the subject of the abatement of suits by death, the commentator observes, that actions
 
 ex delicto,
 
 never shall be revived, either by or against the executors, or other representatives. But in actions arising
 
 ex contractu,
 
 where the right descends to the representatives óf the plaintiff, though the suits shall abate hy the death of the parties, yet they may be revived against, or by the executors. (3
 
 Bl.
 
 312.) Now we know that according to the law this writer was expounding, the death of either party before a verdict, put the cause out of court; and that the practice of continuing it by
 
 scire facias,
 
 was, and yet is, altogether unknown. By reviving a suit, therefore,
 
 *498
 
 he meant bringing an action by, or against the executor, or other representative. Every reason of policy, jus--tice and convenience, which dictates the propriety of con-timing a pending suit, seems to my mind equally strong in favor of instituting an original suit. And so generally lias this construction heen assumed as the true one, that many actions have been brought, and recoveries had, since 1799; in which, whatever other important questions may have been agitated, a doubt on this, as far as I am informed, has never been expressed. In one case an action was brought, and a recovery had, against executors for a deceit committed by their testator in the sale of a chattel; and it was referred to the Supreme Court to decide what judgment should be entered. This question was then open on the record, had the court considered only whether the action was one of those contemplated by the act of 1799; not doubting that a suit which might be revived, could also be instituted. (1
 
 Car. L. Rep.
 
 529.)
 

 The other question relative to the admissibility of the judgment against the heirs, as evidence against the administrator, is of more difficult solution. But after examining it in the various aspects in which it has been presented by the argument, endeavouring to ascertain the intention of the legislature, and consulting, in the absence of all precedent, the best information to be derived from general reasoning, the conclusion arrived at is, that the evidence should have been received.
 

 The words of the act of 1799 are, that “the suit shall stand revived, and shall be proceeded on in the same manner as if the defendant or defendants were living.” If the defendant was living, and a recovery had as ainst him, a right to the mesne profits would follow as a necessary consequence. And in an action brought to recover them, the defendant would be concluded by the judgment in ejectment, and could not controvert the plaintiff’s title. To allow the title to be controverted by the administrator, who is sued only because he is the depository of the
 
 *499
 
 fund, out of which the damages are recoverable, would clearly contravene the spirit of the act, by depriving the plaintiff of part of the benefit which the right of revival aimed to secure to him.
 

 The heirs are made by the act the proper parties to defend the suit, because they should he heard on a question touching their inheritance; but as they cannot be made liable directly, for the tortious act of the ancestor, this action will not lie against them; yet as the right to these profits, is incidental to the recovery of the land, the administrator must be bound by that recovery, otherwise the suit is not proceeded on in the same manner as if the defendant were living.
 

 The question as to the title of the land, was litigated by the only persons interested in its decision; and who, it may be presumed, would, on that account, make a
 
 bonafide
 
 and real defence. In that question the administrator had no interest.
 

 Although on the death of a person his real and personal estate pass into different channels, yet the whole is made, by our law, a common fund for the payment of debts, the personal being primarily consigned to that end. But when the debts are paid, the residue belongs to the heir and next of kin, and as the administrator holds in trust ultimately for them, the law thus raises a privity between the heirs and next of kin and the administrator. The common law rule of evidence, which makes a judgment against one person inadmissible in an action against another, proceeds on the principle, that the latter had no opportunity of calling witnesses, or cross examining those on the other side, nor of appealing against the judgments But in this case, the heirs, as defendants in the ejectment, had this opportunity, and they are the persons who will be most materially affected, by the diminution of the fund in the hands of the administrator. When the latter is called upon to pay these damages, he sees that the heirs, the persons to whom he is finally accountable, were call*
 
 *500
 
 ed in to contest the principal question, as to the title; and there can consequently remain no solid ground of defence on which he can resist the accessorial claim of mesne pro-rePea^e<* conferences on this question, the general result of the opinion of the Court is, that the nonsuit ought to be set aside, and judgment entered for the plaintiff.
 

 Judgment reversed.